**SEALED**

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 05 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | I N D I C T M E N T |
| | ) | |
| | ) | Criminal No. 6:12-cr-00015 |
| v. | ) | |
| | ) | In violation of: |
| | ) | |
| | ) | Title 26, U.S.C. § 7212(a) |
| JAMES BOWERS JOHNSON | ) | Title 26, U.S.C. § 7203 |

COUNT ONE
26 U.S.C. § 7212(a)
(Corrupt Endeavor To Obstruct, Impede, and Impair
the Due Administration Of the Internal Revenue Code)

The Grand Jury charges that at all times material to this Indictment:

A. **INTRODUCTION**

1. Title 26, United States Code, Section 61 defines gross income as income from whatever source derived, including income from: compensation for services; gross income derived from business; gains derived from dealings in property; interest; rents; dividends; income from discharge of indebtedness; and income from an interest in an estate or trust. Title 26, United States Code, Section 6012 requires the filing of tax returns each year by individuals having taxable year gross income which equals or exceeds the exemption amount. Title 26. United States Code, Section 151(d) sets the exemption amount at $2,000, but the amount is adjusted annually for inflation.

2. From 2000 through at least 2009, the defendant JAMES BOWERS JOHNSON was self-employed and resided in Winchester, Virginia, which is within the Western Judicial District of Virginia. JOHNSON received gross income from several sources, including: the sale of prepaid telephone cards; rental receipts; and capital gains. The defendant sold prepaid telephone cards to clients throughout the Western Judicial District of Virginia, including to clients located in Rockbridge County, Virginia. JOHNSON failed to file tax returns for the calendar years 2000 through 2009, despite receiving gross income each year in excess of the exemption amount. JOHNSON engaged in conduct intended to: conceal his receipt of gross income; hide his ownership and control of assets and investments; disguise his ownership of real property; and avoid leaving an audit trail. JOHNSON requested his customers, including those located in Rockbridge County, Virginia, to make payments to his nominee entities. Additionally, JOHNSON used cash, money orders, and concealed his ownership of assets, including his residence. He placed assets and bank accounts in the names of Limited Liability Companies, Foundations, companies, corporations, domestic and foreign trusts and used third partes in order to conceal his ownership and control. Among the nominee entities used were: Poplar Grove LLC; Towering Sycamore; Dawn to Dusk; Barnes and Bridges Group; Paed, LLC; Check Mate, Inc; If Inc; 333 Inc; Original Intent Trust; The Henry Bastiat Foundation; Winston St. George; 3 Cubed LLC; Son of John LLC; Phone Card for Life; Intrepid Knight; En Passant; Winston St. Geroge; and QEWB, Inc.

4. JBK was the Founder and Leader of Save-A-Patriot Foundation, an organization that claimed paying income taxes was voluntary and provided representation to individuals who purchased and used Save-A-Patriot Foundation materials. In December of 2004, The United

States District Court for the District of Maryland permanently barred JBK and Save-A-Patriot from representing and/or assisting other persons in preparing any correspondence intended to be sent to the Internal Revenue Service.

5.    My Icis, Inc. was a sophisticated computerized warehouse bank based in Arkansas, which at one time had over 2,000 clients. My Icis, Inc. helped its customers get out of the traditional banking system and successfully shield their financial transactions from the government, including the Internal Revenue Service, and thereby avoid paying federal income taxes. Between 2003 and 2006 My Icis' customers deposited approximately $100 million in the My Icis banking system.. On April 8, 2010, the United States District Court for the Western District of Arkansas permanently enjoined My Icis, Inc. and others from organizing, promoting, marketing, or selling any plan or arrangement that advises or assists taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including establishing, facilitating, promoting, or operating anonymous banking and/or financial systems that purport to shield the identity of taxpayers and their financial transactions from the Internal Revenue Service.

## B.    STATUTORY VIOLATIONS

1.    Beginning in or about January 2001 and continuing thereafter up to at least May of 2010, in the Western Judicial District of Virginia and elsewhere, JAMES BOWERS JOHNSON did corruptly obstruct and impede to obstruct and impede the due administration of the Internal Revenue Code by: submitting alleged financial instruments to the United States Department of Treasury; using bogus trusts and other nominees; failing to file income tax returns; creating nominees to obscure ownership in, control of, and income from the assets,

including business income and rental receipts; and engaging in conduct the likely effect of which was to mislead and to conceal, including the acts detailed below.

C.   **ACTIONS IN FURTHERANCE OF THE CORRUPT ENDEAVOR**

<u>Concealment of Gross Receipts and Income</u>

1.   For the years listed below, JOHNSON received gross receipts in excess of the amounts listed below:

| Year | Approximate Amount Of Gross Receipts |
|---|---|
| 1999 | $180,000 |
| 2000 | $168,000 |
| 2001 | $104,000 |
| 2002 | $110,000 |
| 2003 | $87,900 |
| 2004 | $127,000 |
| 2005 | $160,000 |
| 2006 | $385,000 |
| 2007 | $123,000 |

2.   During the years listed below, JOHNSON made deposits into various bank accounts, in the amounts listed below:

| YEAR | ACCOUNT DEPOSITED INTO | AMOUNT OF DEPOSIT |
|---|---|---|
| 1999 | Poplar Grove LLC at Marathon Bank | In excess of $700,000 which at least $400,000 were cash deposits |
| 2000 | Poplar Grove LLC at Marathon Bank | In excess of $1,300,000 which at least $147,000 in cash and $8,600 in money orders |
| 2001 | Poplar Grove LLC at Bank of America | In excess of $100,000 which at least $49,000 were money orders |
| 2002 | Poplar Grove LLC at Bank of America and Dawn to Dusk Asian American Bank | In excess of $64,000 of which at least $45,000 were money orders |
| 2003 | Poplar Grove LLC at Bank of America | In excess of $133,000 of which at least $31,000 were money orders |
| 2004 | Poplar Grove LLC at Bank of America<br><br>My Icis account | In excess of $77,000 of which at least $31,000 were money orders<br><br>In excess of $8,000 |
| 2005 | Secured Cash Network Account<br><br>My Icis Account<br><br>Thales Panama Account | In excess of $23,000<br><br>In excess of $800,000<br><br>Transferred from the My Icis account $100,000 |
| 2006 | Secured Cash Network<br><br>My Icis account | In excess of $39,000<br><br>In excess $150,000 |

Creation Of Nominee Entities

3.      On February 3, 1999, Johnson created Towering Sycamore using an Innovative Financial Consultants, IFC, Trust Application Form. The address listed for Towering Sycamore was 219 Jefferson Street. JOHNSON and his spouse were listed as Managing Directors, while JOHNSON'S sibling was listed as "The Protective Trustee."

4. On or about April 21, 1999, JOHNSON filed Articles of Incorporation with the Nevada Secretary of State, to establish Poplar Grove, LLC. On or about April 28, 1999, a bank account was established in the name of Poplar Grove, LLC, at Marathon Bank in Winchester, Virginia. JOHNSON deposited and dispersed funds from his sale of Prepaid Telephone Cards and receipts from rental properties into this account.

5. On February 6, 2004, PAED, LLC filed Articles of Incorporation with the Nevada Secretary State Officers. Members of PAED, LLC were changed from time to time, but included Intrepid Knight, En Passant, and Checkmate, Inc. PAED, LLC was dissolved July 21, 2005.

6. Checkmate, Inc was licensed by the Secretary of State of Nevada on January 23, 2006. Checkmate listed an office located in Panama City, Panama. JOHNSON used Checkmate to hold and to transfer real property. JOHNSON set up financial accounts for Checkmate at My Icis. The My Icis accounts were used for real estate transactions. JOHNSON withdrew funds from his My Icis accounts in the form of money orders.

Concealment Of Assets

7. 206 S. Braddock, Winchester, Virginia-Rental Property

    a. On or about April 15, 1997, JOHNSON purchased 206 South Braddock Street, Winchester, Virginia.

    b. On or about April 21, 1997, JOHNSON used 206 South Braddock Street as collateral to borrow $56,000 from Nations Banc Mortgage Corp.

c. On or about October 23, 1997, JOHNSON conveyed 206 S. Braddock to Son of John LLC.

d. On or about February 22, 1999, D.J. a Son of John LLC, Member, conveyed 206 S. Braddock Street to Towering Sycamore.

e. On or about February 29, 1999, D.J. sent a letter to Towering Sycamore's Trustees, stating that she was the sole member of Son of John, LLC, and was transferring ownership of 206 South Braddock Street, along with the tenant leases, to Towering Sycamore.

f. On or about July 26, 2004, Towering Sycamore 206 South Braddock Street to PAED LLC using a Deed of Trust.

g. On or about April 25, 2005, PAED LLC conveyed 206 South Braddock Street to Winston St. Geroge using a Deed of Trust.

8. 13 West Pall Mall, Winchester, Virginia-Rental Property

a. On or about September 29, 1994, JOHNSON purchased 13 West Pall Mall Street.

b. On or about February 22, 1999, JOHNSON conveyed 13 West Pall Mall to Towering Sycamore.

c. On or about March 18, 2005, Towering Sycamore conveyed, by Deed of Trust, 13 West Pall to PAED LLC.

  d. On or about May 23, 2005, PAED LLC conveyed 13 West Pall Mall to an unrelated third party in exchange for $194,900.00.

9. 1217 South Loudoun Street, Winchester, Virginia-Rental Property

  a. On or about September 3, 1997, JOHNSON purchased 1217 South Loudoun.

  b. On or about March 11, 1999, JOHNSON and DMJ, conveyed 1217 S. Loudoun Street to Towering Sycamore.

  c. On or about December 15, 2000, Towing Sycamore sold 1217 S. Loudoun Street for $58,020.

10. 219 Jefferson Street, Winchester, Virginia-Personal Residence

  a. On or about May 13, 1998, JOHNSON and DMJ purchased 219 Jefferson Street as his personal residence.

  b. On or about February 22, 1999, JOHNSON and DMJ, conveyed 219 Jefferson Street, to Barns and Bridges Group.

  c. On or about July 26, 2004, Barnes & Bridges Group conveyed 219 Jefferson Street to Check Mate, Inc.

  d. On or about January 22, 2005, Check Mate, Inc. conveyed 219 Jefferson Street to JOHNSON and his spouse. This deed was signed by ERM for: President Services Inc, Director – Check Mate, Inc.

  e.  On or about June 9, 2005, JOHNSON and his spouse secured a home equity in the amount of $296,000.

11.  1203 Valley Avenue-Rental Property

  a.  On or about May 3, 2005, JOHNSON paid $5,000 as a down payment to New Century Realty, which consisted of ten $500 money orders.

  b.  On or about June 6, 2005, JOHNSON transferred $100,000 from Check Mate to Original Intent and subsequently wired $100,000 from Original Intent to New Century Realty as payment for 1203 Valley Avenue.

  c.  On or about June 14, 2005, New Century Realty received a Contract and Declaration of Trust to support the existence of Original Intent. The document was signed by trustees and not JOHNSON. The document stated:

> Contract and Declaration of Trust – This CONTRACT and DECLARATION of TRUST is executed in the United States of America and shall be interpreted and construed under the Common Law of the United States of America". Under Article 1 "Name." The name under which this Trust Organization shall be designated and under which this Trust Organization shall operate is Original Intent, which shall be construed as the collective adopted name of the Board of Trustees

  d.  On September 23, 2005, JOHNSON obtained a home equity loan related to 1203 Valley Avenue in the amount of $195,419. The funds were deposited into his Beau account. On September 26, 2005, JOHNSON transferred $195,419 from his Beau account to Original Intent account. From the Original Intent account, JOHNSON transferred the $195,419 to his Check Mate account.

  e.  On September 26, 2005 through October 7, 2005, JOHNSON disbursed funds from the Check Mate account in the following manner: $6,000 for personal home improvements; $64,900 to Tox-Wastech, Inc for purchase of stock; and $100,000 wired to Thale's Securities, Panama City, Panama.

Activities Intended To Impede, Impair and Obstruct

12.  In December of 2001, JOHNSON sent a letter to the Passport Authority, Frederick County, Virginia, Circuit Court, which stated:

> Dear Passport Authority,
>
> Please be advised that I have terminated my relationship with the Social Security Administration under the provisions set forth in 20 Code of Federal Regulations (CFR), Chapter III, Section 707.1905, and therefore, no longer have a social security number to record for passport purposes (see attached). For clarification, I am a Citizen of the United States of America, not a U.S. citizen. These are not the same. Therefore, since acquiring Citizenship in the United States of America, I have not performed any of the acts listed under "Acts of Conditions" on the reverse side of the application form. Signed and affirmed under penalty of perjury, under the laws of the United States of America, as defined in 28 United States Cod (USC) 1746(I).
>
> All Rights Reserved, Without Prejudice, UCC 1-207,
>
> James Bowers Johnson

13.  On August 17, 2004, JOHNSON was notified in person by Internal Revenue Service Revenue Agent RB that his 2001 and 2002 joint individual tax returns were under civil examination. In response to the notification, Revenue Agent RB received two letters from JBK stating that JBK represented JOHNSON and JOHNSON's spouse as their power of attorney. JBK acknowledged that Federal Income Tax Returns for the 2001 and 2002 tax year and that

JOHNSON was a member of Save-A-Patriot-Fellowship. The letter stated that JOHNSON did not intend:

> To disclose all information necessary for the preparation of tax returns. Furthermore, he has no intention of requesting your assistance for the purpose of preparing or filing any return.
>
> Further please be advised that Mr. Johnson has never been given notice, pursuant to IRS Section 6001, to keep any records pertaining to any tax years.

14.   On July 10, 2008, JOHNSON filed, in the United States District Court for the District of Minnesota, a "Verified Complaint and Petition to Quash Third Party Summons." which listed as defendants "UNITED STATES Federal Corporation, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, NORTH AMERICAN BANKING COMPANY", and Internal Revenue Service Special Agent NP who was conducting an inquiry into JOHNSON's fiscal activities. The complaint was filed to quash a summons issued to North American Banking Company for all money orders issued to JOHNSON.

15.   On or about April 22, 2009, a "Registered Bonded Promissory Note" in the amount of $10,000,000, a "Pre-Offset Notice For Balanced Book Adjustment" and a "Registered Private Offset Bond" issued to the United States Treasury for $10,000,000 were sent to the Internal Revenue Service on behalf of JOHNSON.

15.   On April 28, 2009, JOHNSON sent, via registered mail, a letter addressed to Timothy F. Geithner, Secretary of the Treasury. The letter discussed "Pre Off-Set Notice for Balance Book Adjustment with a face value of $10,000,000 and requested that the:

Payee shall, upon receipt of this instrument, charge account ***-**-5568, via Pass-Through Account *****5568, for the purpose of terminating any past, present or future liabilities express or implied, attached or attributed to ***-**-5568. This is a public debt obligation of the United States.

Payee shall ledger this Note for a period of six months commencing the start of business on April 28, 2009, until close of business November 28, 2009, not to exceed 180 days, at an interest rate equal to the current rate per annum, and, Upon maturity, this Note shall be due and payable in full with interest and any associated fees. Payment shall be ledged against Private Offset Bond Number JBJ001POD. USPS Registered Mail Tracking Number RB 880 839 115 US, held and secured by TIMOTHY F. GEITHNER, SECRETARY OF THE US TREASURY. Void where prohibited by law.

For Credit to, WASHINGTON MUTUAL BANK, for JAMES BOWERS JOHNSON, ***-**-5568, Account Number on Statement: ******524, with $304,532.06 as the exact amount showing on the statement, plus interest, arrearages, penalties, and extra fees, for the benefit of JAMES BOWERS JOHNSON.

16. On or about March 3, 2009, JOHNSON sent to the Internal Revenue Service, Service Center in Ogden, Utah a letter which stated it was from "JOHNSON, UCC File Number 2009-055-7015-2, regarding account number" *****5568 and styled "Pre-Offset Notice for Balanced Book Adjustment."

17. On or about May 29, 2009, JOHNSON sent a letter to the Department of Justice, Assistant Attorney General, Tax Division. In the letter, JOHNSON stated:

As of this date, knowing that the IRS is not a federal agency of the United States, per the pleading entitled "United States' Answer and Claims," as found in Diversified Metals V. T-Bow Trust et al, (Paragraph '4'), and now having a clearer understanding the role of the IRS and my commercial capacity, I, James, intend to honor any commercial responsibilities and, thereby, audit for review and

> accuracy any liabilities or bills / assessments sent to JAMES BOWERS JOHNSON, the liable party in this matter, and as authorized representative for the same, approve for discharge any tax due and payable, by the actual "owner" of the NAME: JAMES BOWERS JOHNSON, the STATE OF VIRGINIA, the subsidiary corporation of the UNITED STATES OF AMERICA, the creator of said NAME...
>
> Therefore, would you please provide a bill / assessment for the appropriate tax years. It is my intent to honor the same for the taxpayer responsible and perform my duties in question as said authorized representative. Please note for the records that I do NOT consent to being recognized by that NAME.
>
> Sincerely (signature)
>
> I am: James Bowers Johnson
>
> Authorized Representative for: JAMES BOWERS JOHNSON"

18. On or about June 11, 2009, JOHNSON mailed a letter to the Commonwealth of Virginia Department of Social Services, which included a money order in the amount of $4,500. JOHNSON stated in the letter:

> Please find the enclosed 'Change in Payee Notice' which has been 'Accepted for Value.' A money order is herein provided for complete setoff of the full amount against US Treasury Account JAMES BOWERS JOHNSON #*****5568. The routing and bond numbers are conveniently located in the Change in Payee Notice.

19. On or about November 23, 2009, JOHNSON, filed a *Limited Power of Attorney – Property Management* at the City of Winchester, Clerk's office. The document stated:

> James Bowers Johnson, Grantor and Principal at 219 Jefferson Street, Winchester, Virginia 22601, does hereby appoint Gary Jones, c/o 2968 Atwood Terrace, Columbus, OH [43224], Republic, Non Domestic Without the US, as Secured Party and as my lawful attorney-in-fact, in my name and on my behalf...

20. On or about January 07, 2010, JOHNSON filed for Chapter 13 bankruptcy in the United States District Court for the Northern District of California, Oakland Division, but failed to include his Social Security Number.

21. On May 07, 2010, JOHNSON filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia.

All in violation of Title 26, United States Code, Section 7212(a) and Title 18, United States Code, Section 2.

**COUNT TWO**
26 U.S.C. § ~~7212(a)~~ 7203 c+c
**(Willful Failure To File)**

The Grand Jury further charges:

1. The Introduction of Count One is realleged and incorporated into this Count of the Indictment

2. That during the calendar year 2005, JAMES BOWERS JOHNSON, who was a resident of Winchester, Virginia, had and received gross income in excess of $160,000, including gross receipts earned in Rockingham County Virginia. By reason of such gross income, he was required by law, following the close of the calendar year 2005 and on or before April 15, 2006, to make an income tax return to the person assigned to receive returns at the office of the Internal Revenue Service at Staunton, Virginia, in the Western Judicial District of Virginia, or to the Director of an Internal Revenue Service Center, or to another Internal Revenue Service office permitted by the Commissioner of the Internal Revenue, stating specifically the

items of his gross income and any deductions and credits to which he was entitled. Well-knowing and believing all the foregoing, he did willfully fail, on or about April 15, 2006, in the Western Judicial District of Virginia and elsewhere, to make an income tax return.

3.  All In violation of Title 26, United States Code, Section 7203 and 18 U.S.C. § 2.

## COUNT THREE
### 26 U.S.C. § ~~7212(a)~~ 7203 *cc*
### (Willful Failure To File)

The Grand Jury further charges:

1.  The Introduction of Count One is realleged and incorporated into this Count of the Indictment

2.  That during the calendar year 2006, JAMES BOWERS JOHNSON, who was a resident of Winchester, Virginia, had and received gross income in excess of $385,000, including gross receipts earned in Rockingham County Virginia. By reason of such gross income, he was required by law, following the close of the calendar year 2006 and on or before April 15, 2007, to make an income tax return to the person assigned to receive returns at the office of the Internal Revenue Service at Staunton, Virginia, in the Western Judicial District of Virginia, or to the Director of an Internal Revenue Service Center, or to another Internal Revenue Service office permitted by the Commissioner of the Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well-knowing and believing all the foregoing, he did willfully fail, on or about April 15, 2007, in the Western District of Virginia and elsewhere, to make an income tax return.

3. All in violation of Title 26, United States Code, Section 7203 and 18 U.S.C. § 2.

## COUNT FOUR
## 26 U.S.C. § ~~7212(a)~~ 7203 *cu*
### (Willful Failure To File)

The Grand Jury further charges:

1. The Introduction of Count One is realleged and incorporated into this Count of the Indictment

2. That during the calendar year 2007, JAMES BOWERS JOHNSON, who was a resident of Winchester, Virginia, had and received gross income in excess of $123,000, including gross receipts earned in Rockingham County Virginia. By reason of such gross income, he was required by law, following the close of the calendar year 2007 and on or before April 15, 2008, to make an income tax return to the person assigned to receive returns at the office of the Internal Revenue Service at Staunton, Virginia , in the Western Judicial District of Virginia, or to the Director of an Internal Revenue Service Center, or to another Internal Revenue Service office permitted by the Commissioner of the Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well-knowing and believing all the foregoing, he did willfully fail, on or about April 15, 2008, in the Western District of Virginia and elsewhere, to make an income tax return.

3. All in violation of Title 26, United States Code, Section 7203 and 18 U.S.C. § 2.

A TRUE BILL this 5th day of April, 2012.

_____
FOREPERSON

_____
TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY