IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No.**  6:12CR00015 |
| | ) | |
| **JAMES BOWERS JOHNSON** | ) | |

### UNITED STATES' TRIAL BRIEF

The United States of America, by and through the United States Attorney for the Western District of Virginia, and the undersigned counsel, hereby submits its Trial Brief in the above-captioned matter.

### CASE HISTORY

On April 5, 2012, a Federal Grand Jury for the Western District of Virginia returned an Indictment against the Defendant, JAMES BOWERS JOHNSON with four violations of the Internal Revenue Code.  Count One alleges that JOHNSON, beginning by at least January of 2001 and continuing through at least May of 2010, corruptly endeavored to obstruct, impede, or impair the due administration of the Internal Revenue Code, in violation of Title 26, United States Code, Section 7212(a).  Counts Two, Three and Four allege that the Defendant willfully failed to file his personal income tax returns for the calendar years 2006, 2007, and 2008.

### FACTS

This matter originated as a result of an Internal Revenue Service investigation of an anti-tax entity known as Innovative Financial Consultants (IFC).  JOHNSON and his wife were IFC

customers.  Simultaneously to the IFC investigation, an examination of one of JOHNSON's nominee entities, Poplar Grove, LLC, was being conducted by the IRS in Ogden, Utah.

Between 1996 and early 2003, IFC received $4.7 million in fees from the sale of 2,000 "pure trusts."  IFC promoters claimed that their customers could lawfully avoid income taxes, while retaining custody and control of the income and assets, by placing income and assets into an IFC trust.  The use of an IFC trust made it difficult for the Internal Revenue Service to track the true ownership of assets or income assigned to the trusts.  Five persons associated with IFC, including IFC promoters, were convicted in September of 2005 of tax crimes, including promoting a tax evasion scheme.

IFC advanced their scheme through several avenues, including domestic and offshore seminars; a promotional website; and an interactive telephone conference line.   IFC was a prominent vendor with the "Institute of Global Prosperity" (IGP), which hosted offshore seminars designed to provide opportunities and resources to individuals wanting to conceal income and assets from the IRS.

Poplar Grove, LLC was formed in April of 1999.  JOHNSON's wife was shown as the manager.  The Minutes of Poplar Grove's First Annual Meeting of the Manager indicated that JAMES JOHNSON was given signature authority over all accounts.  Those factors were indicia that Poplar Grove was a JOHNSON nominee.

The majority of money JOHNSON obtained from the sale of telephone cards and rent was deposited into Poplar Grove accounts.  Between 1999 and 2004, Poplar Grove deposits were in excess of $2,000,000.  Given the amount of proceeds flowing into the account, no record of tax returns being filed, and the IFC association, IRS began a civil audit.

Revenue Agent Robert Biggs was assigned to conduct the audit, RA Biggs obtained third party financial and business records, as well as attempting to obtain financial and tax information from the Defendant in order to conduct his audit. The third party records were obtained through Internal Revenue Service summons. Those records included: bank records; invoices and businesses records from companies JOHNSON sold telephone cards to and purchased from; and real estate records. RA Biggs reviewed all the records and prepared summary charts and reconciliations.

When RA Biggs attempted to contact JOHNSON for his tax records, RA Biggs was notified that JOHNSON had no intention of complying with the Internal Revenue Code. In one letter JOHNSON'S Power of Attorney stated that JOHNSON did not intend to disclose information necessary for the preparation of tax returns. Given JOHNSON's responses and his association with known tax defier organizations, the matter was referred to the Criminal Investigation Division in March of 2005.

## DISCOVERY

The government has provided to defense counsel memoranda of interviews, grand jury transcripts, summary schedules, financial records, business records, recorded conversations and other documents in compliance with its Rule 16 discovery, Brady, Giglio, and *Jencks* Act obligations. The United States has not received any reciprocal discovery.

## ELEMENTS OF THE OFFENSES

1.    **26 U.S.C. Section 7212(a)**

The omnibus clause of 26 U.S.C. § 7212(a) prohibits corrupt or forcible endeavors to

obstruct or impede the due administration of the Internal Revenue Code.  The elements of this offense are that the defendant (1) in any way corruptly (2) endeavored (3) to obstruct or impede the due administration of the Internal Revenue Code.  United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997);  United States v. Bostain, 59 F.3d 474, 476-77 (4th Cir. 1995).

Section 7212(a) applies broadly to the variety of conduct used to attempt to prevent the Internal Revenue Service from carrying out its lawful functions and to avoid the proper assessment and payment of taxes:

> In a system of taxation such as ours which relies principally upon self-reporting, it is necessary to have in place a comprehensive statute in order to prevent taxpayers and their helpers from gaining unlawful benefits by employing that "variety of corrupt methods that is limited only by the imagination of the criminally inclined.

United States v. Martin, 747 F.2d 1404, 1409 (11th Cir. 1984).

To act "corruptly" in the context of Section 7212(a), means to act with the intent to secure an unlawful advantage or benefit either for oneself or another. United States v. Winchell, 129 F.3d 1093, 1098 (10th Cir. 1997).  Examples of corrupt endeavors within the meaning of Section 7212(a), include: filing a false complaint against an IRS Revenue Agent.  United States v. Martin, 747 F.2d 1404, 1410-11 (11th Cir. 1984); backdating documents and using nominees in order to conceal assets and disguise the nature of income. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997); Submitting false financial statements to IRS officers. United States v. Workinger, 90 F.3d 1409, 1411, 1414 (9th Cir. 1996); and filing fraudulent Forms 1099 claiming that defendant paid compensation to IRS employees and others. United States v. Dykstra, 991 F.2d 450, 451-53 (8th Cir. 1993).  "Misrepresentation and fraud . . . are paradigm examples of activities done with an intent to gain an improper benefit or advantage." United States v.

Mitchell, 985 F.2d 1275, 1278 (4th Cir. 1993).

The second element of the omnibus clause of section 7212(a) is "endeavors." Courts have looked to case law interpreting similar language in the obstruction of justice statutes, 18 U.S.C. §§ 1503 and 1505.  See United States v. Martin, 747 F.2d 1404 (11th Cir. 1984).  In Martin the Eleventh Circuit defined "endeavor" as "'any effort . . . to do or accomplish the evil purpose that section was intended to prevent.'" Martin at 1409 (quoting Osborn v. United States, 385 U.S. 323, 333 (1966) (alteration in original).  The means by which a defendant can "endeavor" to impede the due administration of the internal revenue laws are unlimited.   This is quite evident, given the broad language of statute which prohibits conduct that impedes the due administration of the internal revenue laws in any way.

Although many Title 26 offenses require the government to prove the defendant acted willfully, Section 7212(a) does not include any language requiring proof of willfulness.  The Second Circuit upheld a District Court's refusal to give a *Cheek* willfulness instruction, noting that Section 7212(a) does not include that term.  The panel opined that the District Court's instructions as to "corruptly" and "endeavors" were "as comprehensive and accurate as if the word 'willfully' was incorporated in the statute." United States v. Kelly, 147 F.3d 172, 177 (2d Cir. 1998).

2.    **26 U.S.C. Section 7203**

> 26 U.S.C. Section 7203 provides that

> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, [has committed an offense against the United States].

To establish that Defendant JOHNSON failed to make (file) a return, the government must prove that: (1) the Defendant was a person required to file a return; (2) the Defendant failed to file at the time required by law; and (3) the failure to file was willful.  United States v. Buckley, 586 F.2d 498 (5th Cir. 1978), cert. denied, 440 U.S. 982 (1979).  Various provisions of the Internal Revenue Code and related regulations specify the events requiring or obligating a taxpayer to file a tax return.

Section 6012 of the Internal Revenue Code lists the persons and entities required to make returns with respect to income taxes. An individual is required to file a return when his gross income exceeds the sum of the "exemption amount" and the "standard deduction." 26 U.S.C. Section 6012. Section 61(a) of the Internal Revenue Code defines gross income broadly, as "all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, fringe benefits, and similar items; (2) gross income derived from business ...." 26 U.S.C. Section 61(a)(1) and (2).

Section 6072 of the Internal Revenue Code sets forth the time when a given return must be filed. See Treas. Reg. §§ 1.6072-1, 16072-2 (26 C.F.R.),  26 U.S.C. § 6072(a).  Individuals on a calendar year basis are required to file on or before the 15th day of April following the close of the calendar year.

Section 7203 requires that the defendant's failure to file was willful.   Willfulness has been described as the "intentional violation of a known legal duty." United States v. Pomponio, 429 U.S. 10 (1976);  United States v. Bishop, 412 U.S. 346, 360 (1973); United States v. Grumka, 728 F.2d 794, 796 (6th Cir. 1984) and generally must be inferred from the Defendant's acts or conduct.  Spies v. United States, 317 U.S. 492 (1943); United States v. Schafer, 580 F.2d 774, 781-82 (5th Cir.

1978). The Government is not required to prove that the Defendant had a bad purpose. United States v. Pomponio, supra. Once the evidence establishes that the tax evasion motive played any role in a taxpayer's conduct, willfulness may be inferred even if the conduct also served another purpose. Spies v. United States, 317 U.S. at 499.

Conduct that is of a willful nature has been found to include the following: a defendant's general attitude towards the reporting and payment of taxes. See United States v. Hogan, 861 F.2d 312 (1st Cir. 1970), cert. denied, 401 U.S. 911 (1971); United States v. Stein, 437 F.2d 775 (7th Cir.), cert. denied, 403 U.S. 905 (1971); United States v. Taylor, 305 F.2d 183, 185 (4th Cir.), cert. denied, 371 U.S. 894 (1962); a pattern of failing to report substantial income. United States v. Skalicky, 615 F.2d 1117, 1120 (5th Cir.), cert. denied, 449 U.S. 832 (1980); prior and subsequent similar acts reasonably close to the prosecution years. See United States v. Middleton, 246 F.3d 825, 836-837 (6th Cir. 2001); causing the books and records of one's business to be false and inaccurate. See United States v. Bishop, 264 F.3d 535, 553 (5th Cir. 2001); a defendant's general educational background can be considered as bearing on his or her ability to form wilful intent. United States v. Guidry, 199 F.3d 1150, 1157-58 (10th Cir.1999) (willfulness inferred from defendant's expertise in accounting via her business degree and her work experience as comptroller of a company) See United States v. Smith, 890 F.2d 711, 715 (5th Cir. 1989).

    3.    **Willful Blindness**

The United States anticipates that the Defendant may attempt to establish that his actions were not willful due to his good faith belief that his conduct was not illegal and based upon personally held beliefs. However, if the Defendants deliberately avoided acquiring knowledge of a fact or law, then the jury may infer that JOHNSON actually knew the fact or law and was merely trying to avoid giving the

appearance (and incurring the consequences of knowledge). S e e U n i t e d  States v. Ramsey, 785 F.2d 184, 189 (7th Cir.), *cert. denied sub non.* In this case, the use of an "ostrich instruction"–-also known as deliberate ignorance, conscious avoidance, or willful blindness is appropriate, should the evidence establish that JOHNSON consciously avoided learning his conduct was willful. See United States v. Jewell, 532 F.2d 697 (9th Cir.), *cert. denied*, 426 U.S. 951 (1976).

Since the "willful blindness" instruction "creates a risk that the jury might convict on a ... negligence standard ... the instruction should rarely be given." United States v. Ojebode, 957 F.2d 1218, 1229 (5th Cir.), cert. denied, 507 U.S. 923 (1993). The instruction is appropriate when the evidence shows that "(1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct," should a "willful blindness" or "deliberate ignorance" instruction be given. Id. (citing United States v. Farfan-Carreon, 935 F.2d 678, 680 (5th Cir. 1991)). Given the alleged fiscal sophistication, education and training of the Defendant, the instruction may well be appropriate should he attempt to argue reliance on others, that all crimes are commercial in nature and/or his belief in a fiscal fraud scheme.

## EVIDENTIARY ISSUES

**1.     Internal Revenue Service Documents**

The government intends to offer into evidence documents from the Internal Revenue Service Center. These documents will include the following: (1) certified copies of income tax returns which are self-authenticating and admissible under Fed. R. Evid. 803(6), 803(8) and 902, and 26 U.S.C. § 6064; and 2) certified transcripts of account which are also self-authenticating and admissible pursuant to Fed. R. Evid. 803(6) and 902(4). Moore v. United

States, 254 F.2d 213, 216 (5th Cir.), cert. denied, 357 U.S. 926 (1958); Holland v. United States, 209 F.2d 516, 520 (10th Cir.), aff'd, 348 U.S. 121 (1954).

    **2.    Business Records**

A portion of the government's documentary evidence consists of business records, made and maintained in the regular course of business.  Pursuant to Rule 902(11) of the Federal Rules of Evidence, the United States intends to offer numerous documents with an accompanying declaration relating to bank records, and other business records. Photocopies of these records are admissible to the same extent as originals, if there is no genuine dispute as to content, and therefore, do not violate of Fed. R. Evid. 1003, the Original Writings Rule.  Such records are admissible as a hearsay exception pursuant to Fed. R. Evid. 803(6) and can be certified pursuant to Fed. R. Evid. 902.

Before the admission of evidence, the Court needs to be satisfied by "evidence sufficient to support a finding that the matter in question is what it proponent claims.  United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992).  Fed. R. Evid. 902 provides for the authentication certain records, such as business records, official records, foreign records with the use of specified certification.  The documents the United States has authenticated by certification are business records, including bank records, business records and documents filed with state and federal authorities.  These records have been provided to the Defense in electronic form and number is excess of  9,500 images.

The Confrontation Clause, like the hearsay rule, bars the admission of documents kept in the regular course of business as part of a regularly conducted business activity "if the regularly conducted business activity is the production of evidence for use at trial."  United

States v. Thompson, 2012 WL 2023471 (8th Cir. 2012). (Quoting Melendez-Diaz, 557 U.S. 305, 324 (2009). The bank records and business records to be authenticated by Affidavit were not prepared in preparation for litigation, but maintained by financial institutions, governmental entities and businesses for their own use, including tax preparation. Among the business records that the government intends to offer into evidence are originals or copies of canceled checks, bank statements, records of cashier's checks, money orders, and official documents.

### 3. Summary Charts and Summary Witness

The United States will use a direct method of proof to establish that the Defendant was required to file a tax return for the years at issue. This method of proof focuses on specific financial transactions, relying upon direct and circumstantial evidence. The purchase inventory to sell, payment of financial obligations, acquisition of real estate, and collection of rent are relevant in establishing JOHNSON received income in amounts which required him to file a tax return. Analysis and reconciliation of the financial and business records are an important aspect of the case in chief. Thousands of pages of documents have been examined and distilled into summary charts.

Summary charts will assist the jury in the examination of the evidence. Charts summarizing voluminous evidence, which cannot conveniently be examined in court are admissible, so long as the underlying evidence is admissible and available to the defendant for use in cross examination. United States v. Strissel, 920 F.2d 1162, 1163-64 (4th Cir. 1990) (adopting Fifth Circuit position on summary charts); Michals, 469 F.2d at 217; Conford, 336 F.2d at 288. Swallow, 307 F.2d at 84 (stating that "[t]he use of summaries in cases involving complicated documentary proof has been approved in numerous cases by this court, as well as

other appellate courts"). In this case the underlying documents have been made available and many will be introduced as either business records or official documents.

Revenue Agent Biggs examined thousand of pages of financial and business records. Based on his examination he prepared schedules. His schedules specifically list receipts and disbursements made by the Defendant based upon records maintained in the normal course of business. His charts, which identify the specific item he relied upon for each entry, have been provided to the Defendant as part of the discovery.

Revenue Agent Jennifer Maroulis will listen to the testimony presented during the trial. She will testify, based upon the evidence presented at trial, whether JOHNSON was required to file a tax return and the impact that his actions had on the ability of the Internal Revenue Service to ascertain and assess a tax liability. Evidence may be summarized by any qualified person who has analyzed the underlying evidence and heard the testimony in court. McDaniel v. United States, 343 F.2d 785, 789 (5th Cir.), cert. denied, 382 U.S. 826 (1985).

Rule 1006 of the Federal Rules of Evidence provides that the contents of voluminous writings, recordings or photographs, which cannot be conveniently examined in Court, may be presented in the form of a chart, summary or calculation. The rule allows for the admission of charts into evidence as a surrogate for underlying voluminous records, that would otherwise be admissible into evidence. The purpose of this Rule is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous documents. See United States v. Bakker, 925 F.2d 728, 736 (4th Cir.1991).

The use of summary charts is not only approved, but encouraged, particularly in cases involving voluminous writings, recordings, or photographs. Rule 1006 of the Federal Rule of

Evidence provides for the use of summary charts. See United States v. Loayza, 107 F.3d 257, 264 (4th Cir. 1997).  Any potential prejudice from the use of such summaries to the Defendants in this case can be dispelled through the cross examination of Revenue Agents Jennifer Maroulis and Robert Biggs, who prepared, reviewed and/or adopted the summary charts which the United States intends to introduce. The testimony of a summary witness may be received generally so long as the witness bases the summary on evidence raised in the case and is available for cross examination.  United States v. Head, 641 F.2d 174 (4th Cir. 1981), cert. denied, 462 U.S. 1132 (1983); United States v. Normile, 587 F.2d 784 (5th Cir. 1979).  The trial court retains discretion to allow the presentation of summary evidence to guide and assist the jury in understanding and judging factual controversy, especially in a complex case and a large number of witnesses. See United States v. Johnson, 54 F.3d 1150 (4th Cir. 1995). (allowed the introduction of a summary chart in a drug prosecution, prepared by a narcotics detective the testimony of  government witness to illustrate the operation of the drug operation).

In cases where summaries are used and given to the jury, "[t]he jury should be advised that the summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documentary and detailed evidence already admitted; that it should examine the basis upon which the summaries rest and be satisfied they accurately reflect other evidence in the case; and that, if not so satisfied, the summaries should be disregarded." Conford, 336 F.2d at 288.  The summaries may be used during deliberations.  United States v. Koskerides, 877 F.2d  1129, 1134 (2d Cir. 1989);  United States v. Skalicky, 615 F.2d 1117, 1121-22 (5th Cir. 1980), cert. denied, 449 U.S. 832 (1980); United States v. Diez, 515 F.2d 892, 905, n.21 (5th Cir. 1975), cert. denied, 423 U.S. 1052 (1976).  United States v. Silverman, 449 F.2d 1341,

1346 (2nd Cir.), <u>cert. denied</u>, 405 U.S. 918 (1971).

.

## CONCLUSION

The foregoing is a summary of issues that the government anticipates may be presented at trial. Should any legal issues arise that have not been addressed in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

          Respectfully submitted,

          TIMOTHY J. HEAPHY
          UNITED STATES ATTORNEY

          s/ C. Patrick Hogeboom, III
          Assistant United States Attorney
          WA 16598
          United States Attorney's Office
          P.O. Box 1709
          Roanoke, Virginia   24008
          Tel: (540) 857-2250
          pat.hogeboom@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing United States' Trial Brief has been electronically filed by CM/ECF system which will send notification to all counsel of record and hard copy mailed to James Johnson, Blue Ridge Regional Jail, on this 11th day of January, 2013.

          s/ C. Patrick Hogeboom, III
          Assistant United States Attorney